UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| 3305–3321 20TH ST. REZ, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE FARM GENERAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 23-cv-01093-LB<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 54 |

**INTRODUCTION**

In this insurance case, the plaintiff sues State Farm for breach of contract based on State Farm's handling of a water loss at the plaintiff's property caused by a broken pipe. The plaintiff contends that it is owed remediation expenses and lost rental income. It further claims that State Farm breached the covenant of good faith and fair dealing by denying the lost rental income claim and refusing appraisal when the parties disagreed about the cost of repairs. State Farm moved for summary judgment or, in the alternative, partial summary judgment. The motion is denied because there are genuine disputes of material fact.

ORDER – No. 23-cv-01093-LB

**STATEMENT**

**1. The Dispute**

Sajeel Dattani is a certified public accountant and manages properties for the M. Dattani Credit Trust.[1] His father Kaushik Dattani, also an accountant, is the trustee. The Trust is the managing member of the plaintiff LLC: 3305–3321 20th Street Rez.[2] The LLC owned a mixed-use commercial and apartment building on Folsom Street in San Francisco. In August 2022, a broken water supply line damaged three units: one commercial and two residential. Mr. Dattani spent $7,000 to remove the water, including hiring workers and purchasing dehumidifiers.[3] The Trust then submitted a claim to State Farm under a Commercial Apartment Policy.

The parties disagreed about the cost of repairs. State Farm's adjuster assessed the damage at $111,000.[4] The Trust submitted a contractor estimate for $441,000.[5] The parties further disagreed about how to resolve the discrepancy. State Farm suggested an additional review by building consultant Mark Scott.[6] Mr. Dattani demanded appraisal pursuant to the policy.[7] State Farm initially refused, and, over the next few months, the parties exchanged correspondence about whether appraisal was appropriate.[8] In February 2023, State Farm agreed to appraisal. The appraisal panel awarded the plaintiff $474,000 as the replacement cost for the loss.[9]

The Trust also submitted a claim to State Farm for $158,000 in lost rental income during repairs. To assess the claim, State Farm requested additional information including the Trust's tax

---

[1] Dattani Decl. – ECF No. 57-4 at 1 (¶¶ 2–3). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 2 (¶ 5).

[3] *Id.*

[4] Spieth Decl. – ECF No. 54-1 at 2 (¶ 4).

[5] *Id.* at 2 (¶ 5).

[6] *Id.* at 2 (¶ 6).

[7] Appraisal Request (Ex. 4 to Spieth Decl.) – ECF No. 54-1 at 65.

[8] Spieth Letter (Ex. 6 to Spieth Decl.) – ECF No. 54-1 at 70; Dattani Email (Ex. G); Spieth Response (Ex. J) – ECF No. 60 at 178.

[9] Appraisal Award (Ex. L) – ECF No. 60-1 at 5.

returns and rent rolls.[10] The Trust informed State Farm that the units had not earned income for more than five years prior to the loss, and that there were no relevant tax returns, profit statements, or rent rolls.[11] State Farm denied the claim based on the lack of supporting documentation, evidence that the Trust did not intend to rent the units, and because it believed that the units were unrentable due to prior Ellis Act evictions.[12] The denial letter also requested any documents evidencing intent to rent, which the Trust did not provide before filing suit.[13]

**2. The Policy**

The policy provides an appraisal process to resolve disputes over the actual cash value or the amount of loss:

> **SECTION I – CONDITIONS**
> **1. Property Loss Conditions**
> . . .
> **b. Appraisal**
> In case you and we shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on your or our request, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located.
> . . .
> The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with us shall determine the amount of actual cash value and loss.[14]

The policy also covers actual loss of income due to necessary suspension of operations during the period of restoration after a loss.[15]

---

[10] Request for Information (Ex. 10 to Spieth Decl.) – ECF No. 54-1 at 112.

[11] Lost Income Correspondence (Exs. BB, EE, GG) – ECF No. 60-3 at 20, 35, 40.

[12] Denial of Lost Income Claim (Ex. 12 to Spieth Decl.) – ECF No. 54-1 at 123.

[13] *Id.*

[14] Policy (Ex. 1 to Spieth Decl.) – ECF No. 54-1 at 24.

[15] Loss of Income and Extra Expense Endorsement (Opp. Ex. D) – ECF No. 60 at 97.

> **COVERAGES**
> **1. Loss of Income**
> a. We will pay the actual "Loss of Income" you sustained due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by accidental direct physical loss to property at the described premises.[16]

Finally, in the event of a covered loss, the insured assumes various duties to assist in the investigation of the claim.

> **Duties in The Event of Loss**
> (1) You must see that the following are done in the event of loss to Covered Property:
> . . .
> (f) As often as may be reasonably required, permit us to inspect the property proving the loss and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
> (g) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
> (h) Cooperate with us in the investigation or settlement of the claim.[17]

### 3. Procedural History and Jurisdiction

The case was removed from San Francisco Superior Court.[18] The parties do not dispute the court's diversity jurisdiction and have consented to magistrate-judge jurisdiction.[19] 28 U.S.C. §§ 1332(1), 636(c)(1).

## LEGAL STANDARD

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Id.* at 248. A dispute about a material fact is genuine if there is

---

[16] *Id.* at 95.

[17] Policy (Ex. 1 to Spieth Decl.) – ECF No. 54-1 at 25.

[18] Notice of Removal – ECF No. 1.

[19] Consents – ECF Nos. 5–6.

sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden, then the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan*, 210 F.3d at 1103. "Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (cleaned up). If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

When ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the nonmoving party and draws all factual inferences in the nonmoving party's favor. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3). A "district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with

adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). In other words, "whatever establishes a genuine issue of fact must both be in the district court file and set forth in the response." *Id.* at 1029; *see Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[I]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

## ANALYSIS

The issue is whether State Farm is entitled to summary judgment on any claim. There is sufficient evidence for a jury to find that State Farm's denials were unreasonable, and the breach-of-contract claim survives due to disputes of material fact.

**1. Breach of the Implied Covenant of Good Faith and Fair Dealing**

The Trust asserts two theories of breach of the implied covenant: first, State Farm improperly refused appraisal, and, second, State Farm denied the claim for lost rent based on contrived grounds and an inadequate investigation.[20]

To establish a tortious breach of the implied covenant, the plaintiff must show that the insurer withheld benefits unreasonably or without proper cause. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). Reasonableness is objective and evaluated at the time the decision was made. *Bosetti v. U.S. Life Ins. Co. in City of N.Y.*, 175 Cal. App. 4th 1208, 1237 (2009); *Chateau Chamberay Homeowners Assn. v. Associated Intl. Ins. Co.,* 90 Cal. App. 4th 335, 347 (2001). Withholding benefits based on a genuine dispute about the policy is not unreasonable. *Guebara*, 237 F.3d at 992. Similarly, denials based on an insurer's honest mistake, bad judgment, or negligence do not breach the implied covenant. *Chateau Chamberay*, 90 Cal. App. 4th at 346.

---

[20] Opp'n – ECF No. 57 at 19–21.

**1.1   Appraisal**

The appraisal theory survives because a jury could find that State Farm's denial of appraisal was unreasonable.

The policy provides for appraisal if the insurer and the insured "fail to agree as to the actual cash value or the amount of loss."[21] Citing that language, State Farm's adjuster, Mr. Spieth, told Mr. Dattani that the claim presented non-appraisable coverage disputes.[22] In fact, as State Farm managers now concede, the issues were appraisable under California law.[23] Moreover, Mr. Spieth's supervisor, Mr. Harris, knew that such items were appraisable when he reviewed the letter and approved it.[24] He explained that he thought the appraisal panel could determine whether items were damaged but not change the scope of the inspection.[25]

On January 19, 2023, counsel for the Trust sent a letter to State Farm.[26] The letter explained that the California Court of Appeal had previously rejected the argument advanced in Mr. Spieth's letter refusing appraisal. Mr. Spieth read the letter but (1) did not read the underlying case and (2) does not recall consulting any other State Farm employees about it.[27] Instead, he reiterated that "[b]ecause there's a difference in coverage, the request . . . for appraisal process has been rejected [and State Farm's] original decision remains unchanged."[28] Viewing these facts in the light most favorable to the Trust, a jury could find that the denial was objectively unreasonable under the circumstances.

State Farm argues that the denial was reasonable based on another purported rationale: that it and the Trust had not yet "fail[ed] to agree" as required to trigger appraisal under the policy. There

---

[21] Policy (Ex. 1 to Spieth Decl.) – ECF No. 54-1 at 24.

[22] Spieth Letter (Ex. 6 to Spieth Decl.) – ECF No. 54-1 at 70.

[23] Mahoney Dep. (Ex. Z) – ECF No. 60-3 at 8 (pp. 70:7–25); Neely Dep. (Ex. AA) – ECF No. 60-3 at 15 (pp. 74:11–22).

[24] Harris Dep. (Ex. U) – ECF No. 60-1 at 125–126 (pp. 126:11–127:21)

[25] *Id.* at 118–119 (pp. 117:11–118:8)

[26] Gumbiner Letter (Ex. Q) – ECF No. 60-1 at 54 (citing *Lee v. California Capital*, 237 Cal. App. 4th 1154 (2015)).

[27] Spieth Dep. (Ex. T) – ECF No. 60-1 at 86 (pp. 135:5–13).

[28] *Id.*

are two problems. First, State Farm's letters do not mention this rationale, and the reasonableness inquiry turns on the parties' knowledge and conduct at the time of the denial.[29] *Chateau Chamberay*, 90 Cal. App. 4th at 347. Mr. Spieth declares that his letters were intended to convey the prematurity issue but, at best, that creates disputes of fact about the reason for the denial.[30] Second, State Farm construes the phrase ""[i]n case you and we shall fail to agree" to mean that appraisal is only available when the insured and State Farm agree that they have an irreconcilable dispute.[31] But the policy says that appraisal is available "[i]n case you and we shall fail to agree *as to the actual cash value or the amount of loss*." At that point, the appraisal process can be triggered at the "written request of either [party]."[32] There is no requirement that the parties agree that they have reached an impasse or attempt to reconcile large disparities.

The claim survives.

**1.2     Loss-of-Income Claim**

The loss-of-income theory survives because, under the circumstances, a jury could find that the denial was unreasonable due to inadequate investigation.

The Trust is entitled to "actual loss of income" sustained during necessary suspension of its operations caused by the loss.[33] It is undisputed that, at the time of the loss, the two damaged residential units were not rented. In fact, the Trust had not rented the units since at least 2014.[34] Instead, it contends that, after keeping the units off the market for approximately eight years, it listed them for rent fewer than eight weeks before the loss.[35] Thus, when State Farm requested information like rent rolls to show the amount of lost rent, the Trust explained that such records

---

[29] Spieth Letter (Ex. 6 to Spieth Decl.) – ECF No. 54-1 at 71.

[30] Spieth Decl. – ECF No. 54-1 at 3 (¶ 9).

[31] Mot. – ECF No. 54 at 19.

[32] Policy (Ex. 1 to Spieth Decl.) – ECF No. 54-1 at 24 (emphasis added).

[33] Loss of Income and Extra Expense Endorsement (Ex. D) – ECF No. 60 at 95 (cleaned up).

[34] Gumbiner Letter (Ex. GG) – ECF No. 58-3 at 37; Dattani Decl. – ECF No. 57-4 at 7 (¶¶ 49).

[35] Loss of Income Claim (Ex. 11 to Spieth Decl.) – ECF No. 54-1 at 116; Dattani Decl. – ECF No. 57-4 at 7 (¶ 29).

did not exist.[36]

Months passed, and then, amidst the ongoing appraisal dispute, State Farm denied the claim. The denial letter states that (1) the building contained four residential units, (2) they were not rented at the time of the loss, (3) the Trust listed the undamaged units for sale, not for rent, (4) the damaged units were subject to legal restrictions based on a prior Ellis Act eviction, and (5) the Trust ultimately sold the damaged units instead of renting them.[37] These reasons do not speak directly to whether the Trust intended to rent the units. And, for the first time, the denial letter requested any and all documents evidencing the Trust's intent to rent the units at the time of the loss.[38]

Therefore, a jury could find that State Farm's denial of the lost rental income claim was unreasonable. *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d. 809, 817 (1979) ("[I]nsurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim.").

### 2. Breach of Contract

The Trust raises three potential breaches of contract: (1) denial of the Trust's request for appraisal, (2) denial of the Trust's loss of income claim, and (3) failure to pay $7,000 in remediation costs. None fails as a matter of law.

The elements of a breach-of-contract claim are (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. *MacKinnon v. Truck Ins. Exch., Inc.*, 31 Cal. 4th 635, 647 (2003).

---

[36] Lost Income Correspondence (Exs. BB, EE, GG) – ECF No. 60-3 at 20, 35, 40.
[37] Denial of Lost Income Claim (Ex. 12 to Spieth Decl.) – ECF No. 54-1 at 123–124.
[38] *Id.* at 123.

ORDER – No. 23-cv-01093-LB                 9

### 2.1 Appraisal

The issue is whether appraisal was unavailable, foreclosing any breach by State Farm. The answer is no, because the language of the policy rebuts State Farm's position.

State Farm contends that appraisal was premature because the parties had not "failed to agree" as required by the policy. For the same reasons discussed above, this argument does not defeat the Trust's claim for breach of contract; the policy does not require reconciliation of large disparities before appraisal, nor does it require the parties to agree that they have reached an impasse. Instead, State Farm argues that it was exercising its rights under 10 Cal. Code Regs. § 2695.9(d), which allows insurers to reasonably adjust their estimate in response to a higher estimate from the insured. But State Farm did not merely adjust its estimate; instead, it retained a new expert to evaluate both parties' estimates and perform additional inspections as needed.

The policy provides for appraisal "[i]n case you and we shall fail to agree as to the actual cash value or the amount of loss."[39] Here, State Farm assessed the amount of loss as $111,000 whereas the Trust submitted an estimate for $441,000.[40] In response, State Farm did not adjust its estimate and instead proposed a process for reconciliation. Thus, under the plain language of the policy, appraisal was available upon written request.

This theory of breach of contract survives.

### 2.2 Loss-of-Income Claim

The issue is whether the Trust intended to rent the damaged units at the time of the loss. Disputes of fact preclude summary judgment.

State Farm identifies evidence that the Trust did not intend to rent the units. In addition to the issues discussed above, it argues that Kauskik Dattani did not provide notice of the Trust's intent to rent the units to the rent board or a previously evicted tenant, possibly risking penalties under the Ellis Act.[41] It also notes that the Trust has not provided any direct evidence of a Craigslist

---

[39] Policy (Ex. 1 to Spieth Decl.) – ECF No. 54-1 at 24 (emphasis added).
[40] Spieth Decl. – ECF No. 54-1 at 2 (¶¶ 4–5).
[41] K. Dattani Dep. (Ex. 3 to Spinelli Reply Decl.) – ECF No. 54-2 at 58 (pp. 27:18–20).

listing, which Mr. Dattani contends expired after the insurance claim yet was not preserved.[42] And despite Mr. Dattani's claim that twenty to thirty parties expressed interest in renting the units, the Trust has not produced any supporting emails, texts, or rental applications.[43]

On the other hand, Mr. Dattani's declaration details the decision to rent the units, the Craigslist listing and subsequent inquiries, and the ultimate decision to sell the units instead.[44] As support, he provides undated photographs purportedly used in the Craigslist listing.[45] He also includes his father's calendar entries — albeit handwritten and thus lacking metadata — reflecting open houses at the property in the weeks preceding the loss.[46] Although this documentary evidence could be consistent with an intent to sell the units, it supports the Trust's claim when viewed in the light most favorable to the non-moving party.

The court cannot resolve the issue at summary judgment.

**2.3    Remediation Costs**

The final issue is whether the appraisal panel's award precludes the claim for Mr. Dattani's remediation expenses. At least on the current record, the answer is no because the scope of the award is unclear.

State Farm argues, without citation, that the Trust submitted an estimate for remediation costs totaling $45,000 during appraisal.[47] Thus, it contends that the panel considered and awarded the fair value for all remediation, including any immediate actions taken by Mr. Dattani. But declarations by the Trust's counsel and expert attest that the submission did not include the costs of immediate water removal.[48] The award itself — for "the costs to restore the three units . . . to their pre-loss condition" — is ambiguous.[49]

---

[42] Dattani Decl. – ECF No. 57-4 at 8 (¶ 35).

[43] *Id.* at 8 (¶ 34).

[44] *Id.* at 7–11 (¶¶ 28–50).

[45] *Id.* at 8 (¶ 35); Photographs (Ex. O) – ECF No. 60-1 at 42.

[46] Dattani Decl. – ECF No. 57-4 at 7 (¶ 30); Calendar Pages (Ex. N) – ECF No. 60-1 at 38.

[47] Mot. – ECF No. 54 at 10, 19–20.

[48] Gumbiner Decl. – ECF No. 57-1 at 2 (¶ 9); Moriarty Decl. – ECF No. 57-2 at 5 (¶¶ 17–18).

[49] Appraisal Award (Ex. L) – ECF No. 60-1 at 5.

Summary judgment is not warranted because it is not clear whether the panel considered the costs of immediate water removal.

## CONCLUSION

The motion is denied. A jury could find that State Farm's denial of appraisal and lost rental income was objectively unreasonable, so the claim for breach of the implied covenant survives. State Farm is not entitled to summary judgment on the breach-of-contract claim because there are disputes of material fact.

**IT IS SO ORDERED.**

Dated: April 16, 2025

_____
LAUREL BEELER
United States Magistrate Judge